**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-24619-CIV-ALTONAGA/Torres**

**POET THEATRICALS MARINE, LLC**; *et al.*,

    Plaintiffs,
v.

**CELEBRITY CRUISES, INC.**; *et al.*,

    Defendants.
_____/

# ORDER

**THIS CAUSE** came before the Court on Plaintiffs, Poet Theatricals Marine, LLC; Poet Productions, LLC; Poet Technical Services, LLC; and Poet Holdings, Inc.'s Motion to Remand [ECF No. 30], filed on December 10, 2020. Defendants, Celebrity Cruises, Inc. ("Celebrity"); Royal Caribbean Cruises, Ltd.; Costco Travel; Cruises Inc.; Cruise One, Inc.; Cruise One, Inc. d/b/a Dream Vacations; Tourico Holidays, Inc. d/b/a LastMinuteCruises.com; World Travel Holdings d/b/a Cruises.com; World Travel Holdings d/b/a Cruises Only; World Travel Holdings d/b/a CheapCruises.com; and Direct Line Cruises, Inc. (the "Co-Defendants" or together with Celebrity, the "Defendants"), filed an Opposition to Motion to Remand [ECF No. 38], to which Plaintiffs filed a Reply [ECF No. 39]. The Court has carefully considered the parties' written submissions, the Complaint for Damages and Equitable Relief (the "Complaint") (*see* [ECF No. 1-2] 5–28),[1] the record, and the applicable law. For the following reasons, the Motion is denied.

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

## I. BACKGROUND

This suit involves a dispute over the unauthorized and continued use of Plaintiffs' intellectual property. (*See generally* Compl.). Plaintiffs, Poet Theatricals Marine, LLC; Poet Productions, LLC; and Poet Technical Services, LLC, are Louisiana limited liability companies whose sole members are Florida domiciliaries. (*See id.* ¶¶ 1–3). Plaintiff, Poet Holdings, Inc., a Louisiana corporation with its principal place of business in Florida, is the holder of the intellectual property created and utilized by Poet Theatricals Marine, LLC; Poet Productions, LLC; and Poet Technical Services, LLC. (*See id.* ¶ 4). Defendants are either foreign or Florida corporations conducting business in Florida. (*See id.* ¶¶ 5–15).

***The facts***. Plaintiffs create, produce, and execute live marketing and entertainment concepts, including shows aboard cruise lines. (*See id.* ¶ 18). Plaintiffs entered into agreements with Celebrity, under which Plaintiffs created, developed, pre-produced, and produced shows for Celebrity's vessels. (*See id.* ¶¶ 19–20). Plaintiffs performed these shows regularly aboard the vessel for which they were produced until the termination of the specific vessel's agreement. (*See id.* ¶ 20). The last agreement with Celebrity terminated in March 2016. (*See id.*).

Celebrity acquired numerous video recordings and still photographs of Plaintiffs' shows. (*See id.* ¶ 21). These "recordings and photographs reflected" Plaintiffs' "artistic works, concepts, ideas, and other creations[.]" (*Id.* (alteration added)). By the terms of the agreements, Celebrity had "the exclusive right and limited license to use, perform or display [Plaintiffs'] shows on the vessel during the Term of this Agreement." (*Id.* ¶ 22 (alteration added; other alteration adopted; quotation marks and footnote call number omitted)). The "Ownership" section of the agreements provided: "If Cruise Line wishes to use any Project Materials for any other purpose other than in Producer's Shows within the scope of this Agreement, Cruise Line must obtain a license for such use from Producer." (*Id.* (quotation marks omitted)).

Project Materials, in turn, were defined as:

> [T]he data, materials, documentation, computer programs, inventions (whether or not patentable), pictures, audio, video, animation, artistic works, musical orchestrations, documents, text, photographs, pictures, sound recordings, programs, concepts, ideas, studies, artwork, plates, negatives, positives, DVDs, CD-ROMS, scripts, proofs, brochures, text, copy, and all other works of authorship provided by Producer, and all drafts, copies and other physical embodiments thereof, together with all images, likenesses, voices, and other characteristics contained therein, including all worldwide rights therein under patent, copyright, trade secret, confidential information, moral rights, and other property rights, created or developed in whole or in part by Producer and used in and in connection with the Shows. Project Materials shall not include third party owned or controlled properties [e.g., Broadway or popular music owned by others and any similar underlying rights in third party literary, theatrical or other properties] included in the Shows with Cruise Lines approval.

(*Id.* ¶ 23 (first alteration added; other brackets in original)). Stated succinctly, Project Materials were the intellectual property Plaintiffs developed and used in the shows. (*See id.*). Each agreement provided that "[a]ll Project Materials shall be and remain the sole property of [Plaintiffs] and shall be delivered to [Plaintiffs] upon termination of this [a]greement." (*Id.* (first alteration in original; quotation marks omitted)).

The terms of the agreements granted Celebrity a "limited license" to use, perform, or display the shows over the duration of each agreement. (*Id.* ¶ 24 (quotation marks omitted)). Despite knowing the use of Plaintiffs' intellectual property was not permitted following the termination of the agreements, Celebrity "continued to use the video recordings and still photographs of scenes in [Plaintiffs'] shows in promotional materials about cruises aboard vessels in Celebrity's fleet following termination of the agreements between [Plaintiffs] and Celebrity." (*Id.* (alterations added)). These promotional materials "were displayed on Celebrity's own websites worldwide" and "appeared . . . in various digital and print brochures and posters used in marketing in various venues." (*Id.* ¶ 25 (alteration added)).

Celebrity has caused and allowed Co-Defendants to use Plaintiffs' intellectual property to their benefit. (*See id.* ¶ 26). By way of example, Co-Defendants either "display[ed] scenes from

3

[Plaintiffs'] shows as part of [their] efforts to recruit quality staff" or "used and/or continue to use the still images and video recordings obtained from Celebrity on their websites to sell cruises aboard Celebrity vessels[.]" (*Id.* (alterations added)). Defendants "enjoy[] a commercial advantage by the use of the images and recordings for which they have not paid." (*Id.* (alteration added)).

In 2019, Plaintiffs discovered Defendants' misappropriation and wrongful use of Plaintiffs' intellectual property. (*See id.* ¶ 27). Although they were put on notice of the wrongful use and asked to cease use, Defendants continue to display Plaintiffs' shows on their websites. (*See id.*). In other words, Defendants "continue to benefit from their misappropriation and wrongful use of [Plaintiffs'] intellectual property." (*Id.* (alteration added)).

*Plaintiffs' claims*. On September 29, 2020, Plaintiffs filed an action in Miami-Dade County Circuit Court against Defendants asserting claims for conversion (Count I); unjust enrichment (Counts II, III, IV, VI, VIII, X, XII, XIV, XVI, XVIII, XX); and vicarious liability for unjust enrichment (Counts V, VII, IX, XI, XIII, XV, XVII, XIX, XXI).

*Defendants' Removal*. On November 10, 2020, Defendants timely filed a Notice of Removal [ECF No. 1]. According to Defendants, the Court has subject matter jurisdiction under 28 U.S.C. section 1331.[2] (*See* Notice of Removal ¶ 7). Defendants state Plaintiffs' claims are preempted by the Copyright Act, 17 U.S.C. section 301, because "the rights at issue fall within the subject matter of copyright and are equivalent to the exclusive rights of copyright." (Notice of Removal ¶ 20). Under 28 U.S.C. section 1338(a), the Court has original jurisdiction of any action arising under the Copyright Act.

---

[2] There is no dispute that diversity jurisdiction is absent in this case. (*See* Compl. ¶¶ 1–15).

4

***Plaintiffs' Motion***. By their present Motion, Plaintiffs argue removal is improper because the Court lacks subject matter jurisdiction over their state law claims, none of which, according to Plaintiffs, is preempted by the Copyright Act. (*See generally* Mot.; Reply).

## II.     STANDARD

Under 28 U.S.C. section 1441, an action filed in state court may be removed to federal court if the district court has original jurisdiction. Original jurisdiction exists in civil actions presenting federal questions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. To determine whether a claim "arises under" federal law, courts look to "whether a federal question appears on the face of the plaintiff's well-pleaded complaint." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009) (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)). "'As a general rule, a case arises under federal law only if it is federal law that creates the cause of action.'" *Id*. (quoting *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996)). Where, as here, a complaint alleges exclusively state law claims, "there is no jurisdiction under the well-pleaded complaint rule." *Id*.

One exception to the well-pleaded complaint rule is complete preemption, which arises when "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (citation and footnote call number omitted). "When Congress comprehensively occupies a field of law, 'any civil complaint raising this select group of claims is necessarily federal in character' and thus furnishes subject-matter jurisdiction under 28 U.S.C. [section] 1331." *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1211–12 (11th Cir. 1999) (alteration added; citation omitted). In other words, district courts have subject-matter jurisdiction over state law claims that have been completely preempted, and

5

"defendants may remove to federal court those actions that contain such claims." *Id*. at 1212 (citation omitted).

### III. ANALYSIS

As stated, Plaintiffs move to remand this action to state court, contending Defendants do not establish the Court has jurisdiction over the case because Plaintiffs' claims are not preempted by the Copyright Act. (*See generally* Mot.; Reply).

***The law***. The Copyright Act's preemption provision provides, in part:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title. . . . [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a) (alterations added). The Copyright Act's preemption is "generally broad." *Foley v. Luster*, 249 F.3d 1281, 1285 (11th Cir. 2001) (citation omitted).

A two-part test is employed in copyright preemption cases. *See Crow v. Wainwright*, 720 F.2d 1224, 1225–26 (11th Cir. 1983). Preemption by the Copyright Act occurs if the rights at issue: (1) "fall within the subject matter of copyright set forth in sections 102 and 103[,]" and (2) "are equivalent to the exclusive rights of section 106." *Id.* (alteration added; quotation marks, citation, and footnote call number omitted). Under the second prong, "if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution[,] or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright and there is no preemption." *Foley*, 249 F.3d at 1285 (alteration added; quotation marks and citation omitted). This is known as the "extra element test[.]" *Id.* at 1286 (alteration added; quotation marks omitted).

***The subject matter requirement***. Under the first prong, the Court must determine whether

6

the works at issue are copyrightable. *See Crow*, 720 F.2d at 1225–26; *see also Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004) ("The subject matter requirement is satisfied if the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works." (citation omitted)).

Defendants argue Plaintiffs' alleged intellectual property — particularly, the "video recordings and still photographs from Plaintiffs' shows" — falls within the subject matter of copyright. (Opp'n 18–19 (quotation marks omitted; citing Compl. ¶¶ 21, 24–26)). The Court agrees — the first prong of the preemption analysis is met in this case.[3] *See* 17 U.S.C. § 102(a) (listing "pictorial . . . works" and "motion pictures and other audiovisual works" as works of authorship subject to copyright protection (alteration added)); *see also id.* § 101 (defining "[a]udiovisual works" and "[p]ictorial . . . works" (alterations added; quotation marks omitted)). By alleging Defendants "use [] video recordings and still photographs of scenes in [Plaintiffs'] shows . . . and enjoy[] a commercial advantage by [] us[ing] [] the images and recordings" (Compl. ¶ 24, 26 (alterations added); *see also id.* ¶¶ 25, 27), Plaintiffs' claims[4] plainly come within the subject matter of copyright.[5] *See Four Quarters Interfaith Sanctuary of Earth Religion v. Gille*,

---

[3] Plaintiffs agree with Defendants that video recordings and photographs are subject matter within the Copyright Act. (*See* Reply 9 (writing Plaintiffs do "not-indeed, could not-dispute that photographs and video recordings are within the scope of copyright.")).

[4] The analysis under this first prong is the same for Plaintiffs' conversion and unjust enrichment claims, all of which are based on the use of Plaintiffs' video recordings and still photographs. (*See generally* Compl.).

[5] Plaintiffs contend "[p]reemption is [] improper because the licenses grant [Plaintiffs] rights to intellectual property that the Copyright Act never could." (Mot. 11 (alterations added)). Plaintiffs insist their "claims extend beyond photographs and recordings, to uncopyrightable 'artistic works, concepts, ideas, and other creations embodied in the images and recordings' themselves." (Reply 10 (emphasis omitted; quoting Compl. ¶ 33)).

Plaintiffs' contention misses the mark. It is enough that Plaintiffs' claims relate to Defendants' use of video recordings and still photographs — subject matter that certainly falls within the ambit of at least one of the categories of copyrightable works. *See Priority Payment Sys., LLC v. Signapay, Ltd*, 161 F. Supp. 3d 1285, 1289 (N.D. Ga. 2015) (recognizing that "if a claim relates to something that falls within the

No. 3:19-cv-12, 2019 WL 529079, at *5 (W.D. Pa. Feb. 11, 2019) (finding first prong satisfied where the plaintiff alleged the defendants were "utilizing photographs of the property . . . belonging to [the p]laintiff and of [the p]laintiff's events in their online advertising and publications" (first alteration in original; quotation marks omitted)).

   ***The equivalency requirement***.  Under the second prong, to avoid preemption, Plaintiffs must satisfy the extra element test.  *See Crow*, 720 F.2d at 1225–26.  As noted, "there is no preemption if the state-law claim requires an element instead of or in addition to the acts of reproduction, performance, distribution, or display, such that the state-law claim is qualitatively different than copyright infringement."[6] *Myeress v. Marmont Hill, Inc.*, No. 2:18-cv-438, 2018 WL 5293229, at *3 (M.D. Fla. Oct. 25, 2018) (citing *Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C.*, 596 F.3d 1313, 1325 (11th Cir. 2010)).  "The extra element test, however, is somewhat misleading because this analysis is not a rote comparison of the elements of a copyright claim against the state law claim asserted."  *Taylor v. Trapeze Mgmt., LLC*, No. 0:17-cv-62262, 2018 WL 9708619, at *4 (S.D. Fla. Mar. 26, 2018) (quotation marks omitted).  Instead, the test requires that the Court "determine if the state law claim includes a qualitatively different element." *Tolbert v. High Noon Prods., LLC*, No. 4:18-cv-00680, 2019 WL 127363, at *7 (N.D. Ala. Jan. 8, 2019) (quotation marks and citations omitted).

---

'subject matter of copyright' as defined in Section 102(a) of the Act, it appears that the Eleventh Circuit would find the first step of the complete preemption analysis to be satisfied." (discussing *Dunlap v. G&L Holding Grp., Inc.*, 381 F.3d 1285, 1294–97 (11th Cir. 2004))); *see also, e.g.*, *Briarpatch Ltd., L.P*, 373 F.3d at 305 ("A work need not consist entirely of copyrightable material in order to meet the subject matter requirement, but instead need only fit into one of the copyrightable categories in a broad sense." (citation omitted)); *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 455 (6th Cir. 2001); *U.S. ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997).

[6] To establish copyright infringement, the plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citation omitted).

*Plaintiffs' conversion claim against Celebrity (Count I)*. Count I states a conversion claim against Celebrity. (*See* Compl. ¶¶ 28–31). "Under Florida law, a conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Sinclair & Wilde, Ltd. v. TWA Int'l, Inc.*, No. 20-20304-Civ, 2020 WL 6135192, at *5 (S.D. Fla. Oct. 19, 2020) (quotation marks and citation omitted). To succeed on a claim for conversion, a plaintiff must allege "(1) he has a right to the property; (2) he has an absolute right to the immediate possession of the property; (3) he made a demand for possession of the property; and (4) the defendant wrongfully assumed control or ownership over the property." *Ascentium Corp. v. Terremark N. Am., Inc.*, No. 10-20906-Civ, 2011 WL 1233256, at *3 (S.D. Fla. Mar. 30, 2011) (citation omitted).

Plaintiffs allege Celebrity is liable for conversion because it failed to "cease all use of [Plaintiffs'] intellectual property" and "continu[es] to use the intellectual property in some promotional materials." (Compl. ¶ 30 (alterations added)). They state this ongoing use results in Celebrity's frequent display, reproduction, and distribution of Plaintiffs' intellectual property — namely, "video recordings and still photographs" — to potential fare paying passengers. (*Id.* ¶ 30; *see id.* (asserting Celebrity "displays[]" Plaintiffs' video recordings and photographs on its website; and distributes and reproduces Plaintiffs' video recordings and photographs "in digital and print brochures . . . [for] marketing" and on "Celebrity's YouTube channel" (alterations added))). Plaintiffs demand Celebrity "return" their intellectual property by "ceas[ing] all use." (*Id.* ¶¶ 29–30 (alterations added; quotation marks omitted)). Plaintiffs allege the damages they suffer flow from Celebrity's "commercial advantage" by reason of its "use of [Plaintiffs'] images and recordings for which [Celebrity] h[as] not paid." (*Id.* ¶ 26 (alterations added); *see also id.* 11).

Celebrity contends Plaintiffs' conversion claim is preempted because "the claim is about

9

unauthorized publication and thus necessarily seeks to enforce rights that are equivalent to the exclusive rights provided by the Copyright Act." (Opp'n 13). The Court agrees.

Plaintiffs' conversion claim seeks to vindicate rights that are not qualitatively different from the bundle of rights afforded to copyright owners in 17 U.S.C section 106[7] and thus, lies in an action for copyright infringement. Specifically, the gravamen of Plaintiffs' conversion claim is that Celebrity "continu[es] to use" and exploit Plaintiffs' "intellectual property" by "display[ing]" it on Celebrity's website, "us[ing]" it in "various . . . marketing . . . venues[,]" and "invit[ing] media" to "download[]" it. (Compl. ¶¶ 25, 29–30 (alterations added)). Plaintiffs' conversion claim — based on Celebrity's display, distribution, or other use of the intellectual property — does not contain an "extra element" to avoid preemption[8] and as a result, must be

---

[7] Section 106 states:

> Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106.

[8] Plaintiffs' attempt to evade preemption by reciting the elements of conversion is unavailing. (*See* Mot. 6 (insisting "[n]either the element of wrongfully asserted dominion nor the defendant's failure to return property on demand are [sic] elements of a copyright infringement claim." (alteration added))). Again, "the extra element test[] is not a rote comparison of the elements of the two claims[,]" but an inquiry of whether an extra element distinguishes the rights from those afforded by the Copyright Act. *Psychic Readers Network, Inc. v. Take-Two Interactive Software Inc.*, No. 17-61492-Civ, 2018 WL 1517690, at *3 (S.D. Fla. Feb. 5, 2018) (alterations added; quotation marks omitted).

Likewise, Plaintiffs' invocation of *AutoNation, Inc. v. GAINSystems, Inc.*, No. 08-61632-Civ, 2009 WL 1941279 (S.D. Fla. July 7, 2009), and *Asunto v. Shoup*, 132 F. Supp. 2d 445 (E.D. La. 2000), fails to persuade. In *AutoNation*, the counter-plaintiff not only alleged the counter-defendant "failed to return

dismissed.[9] *See OpenRisk, LLC, v. Microstrategy Servs. Corp.*, 876 F.3d 518, 524 (4th Cir. 2017) ("[W]hen a conversion claim . . . rests on an allegation of wrongful copying and distribution of intellectual property, it is 'equivalent' to a copyright infringement claim and thus preempted[.]" (alterations added)); *Nat'l Rifle Ass'n of Am. v. Ackerman McQueen, Inc.*, No. 3:19-cv-2074, 2020 WL 5526548, at *8 (N.D. Tex. Sept. 14, 2020) (conversion claim preempted because it "rest[ed] on an allegation of wrongful copying of . . . intellectual property (*i.e.*, digital photos) and reproduction of those photos on [a] website." (alterations added; quotation marks omitted)).

*Plaintiffs' unjust enrichment claim against Celebrity (Count II)*. Count II asserts an unjust enrichment claim against Celebrity. (*See* Compl. ¶¶ 32–34). Under Florida law, the elements of an unjust enrichment claim are: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it

---

tangible materials containing proprietary information and any copies, extracts, or other reproductions of such materials[,]" but also plead that the counter-defendant's conduct was willful, wanton, outrageous, fraudulent, and malicious. 2009 WL 1941279, at *8 (alteration added; quotation marks omitted); *see also id.*, No. 08-61632-Civ, Countercls. [ECF No. 40] ¶ 112. In *Asunto*, the plaintiff alleged "the conversion of a tangible, money, rather than an intangible, such as a copyright." 132 F. Supp. 2d at 452. The allegations in *AutoNation* and *Asunto* are not like Plaintiffs' allegations here, and thus, Plaintiffs' reliance on *AutoNation* and *Asunto* is misplaced.

[9] Plaintiffs concede that "[w]ithout registration, as to any of the 'project materials' that are copyrightable, any infringement claim would have to be dismissed and refiled after the Copyright Office completes the registration process." (Mot. 3 n.2 (alteration added)). The fact Plaintiffs have failed to register their "project materials" does not preclude the application of the doctrine of preemption. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010) (explaining the Copyright Act's "registration requirement is a precondition to filing a claim that does not restrict a federal court's subject-matter jurisdiction.").

Given Plaintiffs' concession they cannot replead their state law claims as federal claims, the Court will evaluate all claims to determine whether they are preempted by the Copyright Act and subject to dismissal. *See Grier v. Griffin Moving & Storage, Inc.*, 452 F. Supp. 3d 1325, 1332 (S.D. Fla. 2017) ("Having found that Plaintiffs' state law claims . . . are preempted by the Carmack Amendment, those claims must be dismissed." (alteration added)); *see also WH Midwest, LLC v. A.D. Baker Homes, Inc. MJB Drafting Servs., LLC*, No. 5:18-cv-183, 2019 WL 4228884, at *6 (N.D.W. Va. Sept. 4, 2019) ("Once a court determines that a state law claim has been completely preempted by the Copyright Act and therefore that it has jurisdiction to consider it, the court must then dismiss the preempted claim for failing to state a claim." (citations omitted)).

11

would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citations omitted).

Plaintiffs allege (1) they conferred a benefit on Celebrity (*i.e.*, use of their intellectual property); (2) Celebrity accepted, used, and retained their intellectual property; and (3) it would be unjust for Celebrity to retain all royalties, fees, and charges owed to Plaintiffs after the termination of Plaintiffs and Celebrity's licensing agreements. (*See* Compl. ¶¶ 32–34). Plaintiffs incorporate one additional allegation against Celebrity: Plaintiffs' right to royalties and licensing fees for Celebrity's use of Plaintiffs' intellectual property based upon the agreed licensing terms between Plaintiffs and Celebrity. (*See id.* ¶ 32; 12). Plaintiffs' additional allegation introduces an extra element (expectation and agreement of payment) that changes the nature of the claim.[10] Plaintiffs' unjust enrichment claim is thus not preempted by the Copyright Act. *See Davis v. DreamWorks Animation SKG, Inc.*, No. 08-80506-Civ, 2009 WL 10700120, at *4 (S.D. Fla. May 14, 2009), *vacated in part on other grounds*, 2009 WL 10700121 (S.D. Fla. Sept. 3, 2009) (unjust enrichment claim not preempted because it was based on the parties' "mutual understanding . . . that compensation was to be paid as part of the business relationship." (alteration added)); *Cadkin v. Loose*, No. CV 08-1580, 2008 WL 11336390, at *3 (C.D. Cal. Apr. 24, 2008) (unjust enrichment claim not preempted because it was based on a "violation of the parties' contract," rather than

---

[10] The Court notes Celebrity is correct that the Complaint "contains an abundance of allegations that [Celebrity] ha[s] published video recordings and still photographs without authorization." (Opp'n 13 (alterations added)). The Court will not, however, accept Celebrity's invitation to apply a blanket preemption to all unjust enrichment claims arising from a factual circumstance involving a copyright infringer's act of unauthorized reproduction, distribution, display, or performance of copyrightable or uncopyrightable material. (*See id.* 11–13, 16 (insisting the Court "adhere to the overwhelming weight of authority . . . that holds unjust enrichment claims preempted." (alteration added))); *see also Wimer v. Reach Out Worldwide, Inc.*, No. CV 17-1917, 2017 WL 5635461, at *4 (C.D. Cal. July 13, 2017) (declining to subscribe to the reasoning that at "any time a party mentioned that the other party 'benefitted' from a potentially copyrightable work, preemption would be the only result" because such reasoning would possibly swallow up a viable unjust enrichment claim).

unauthorized use of copyrightable materials, and alleged the extra element of "expectation of compensation by both parties[]" (alteration added; quotation marks omitted)); *cf. AVKO Educ. Research Found. Inc. v. Wave 3 Learning Inc.*, No. 15-cv-3393, 2015 WL 6123547, at *5 (N.D. Ill. Oct. 15, 2015) (unjust enrichment claim not preempted in part because the claim relied "on the failure to pay royalties and licensing revenues from an agreement[]" (alteration added)).

*Plaintiffs' unjust enrichment claims against Co-Defendants (Counts III, IV, VI, VIII, X, XII XIV, XVI, XVIII, and XX)*. Counts III, IV, VI, VIII, X, XII, XIV, XVI, XVIII, and XX allege unjust enrichment claims against Co-Defendants. (*See* Compl. ¶¶ 35–42, 47–50, 55–58, 71–74, 79–82, 87–90, 95–98). As noted, for an unjust enrichment claim, Florida law requires "(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (quotation marks and citation omitted).

Plaintiffs allege (1) Celebrity caused or allowed Co-Defendants to acquire video recordings and/or photographs from Plaintiffs' shows (*see* Compl. ¶¶ 35, 39, 47, 55, 63, 71, 79, 87, 95, 103); (2) Co-Defendants use the recordings and/or photographs on their websites for promotional purposes without authorization (*see id.* ¶¶ 36, 40, 48, 56, 64, 72, 80, 88, 96, 104); (3) Co-Defendants unjustly benefited from the unauthorized use of Plaintiffs' intellectual property (*see id.* ¶¶ 37, 41, 49, 57, 65, 73, 81, 89, 97, 105); and (4) Co-Defendants' receipt of the benefits and privileges Plaintiffs conferred without paying royalties, fees, or charges in return for those benefits and privileges constitutes unjust enrichment (*see id.* ¶¶ 38, 42, 50, 58, 66, 74, 82, 90, 98, 106). Similarly, Plaintiffs assert Co-Defendants "display[] scenes from [Plaintiffs'] shows . . . aboard [] vessels" and "used and/or continue to use the still images and video recordings . . . on their websites

13

to sell cruises aboard Celebrity vessels[.]" (*Id.* ¶ 26 (alterations added)).

Quite simply, Plaintiffs' unjust enrichment claims against Co-Defendants are not qualitatively different from a copyright infringement claim. The core of Plaintiffs' thinly pleaded claims is that Co-Defendants have been (and continue to be) enriched by displaying, using, and reproducing Plaintiffs' video recordings and photographs on their websites for promotional purposes. Stated differently, Plaintiffs seek, through their unjust enrichment claims, vindication of rights that are equivalent to the rights created by the Copyright Act.[11] Consequently, Plaintiffs' claims against Co-Defendants are preempted and must be dismissed. *See, e.g.*, *Schumacher Homes of La., Inc. v. R.E. Wash. Constr. LLC*, No. 2:16-cv-00423, 2016 WL 5415083, at *3 (W.D. La. Sept. 27, 2016) (unjust enrichment claim preempted because the claim was based on the defendants' use of the plaintiffs' copyrighted works and not based on a contractual or fiduciary breach (citations omitted)); *Avalos v. IAC/Interactivecorp.*, No. 13-cv-8351, 2014 WL 5493242, at *7 (S.D.N.Y. Oct. 30, 2014) (concluding the plaintiff's unjust enrichment claim was "plainly preempted by the Copyright Act, as it [was] based wholly on '[the d]efendants' unauthorized commercial use of [the p]laintiff's photographs[]' — a claim that falls within the ambit of rights already protected by the Copyright Act." (alterations added; citations omitted)).

---

[11] In their Reply, Plaintiffs insist their "contractually created expectation" of payment with Celebrity "extends" to Co-Defendants "even though they are not parties to the contracts." (Reply 9). According to Plaintiffs, "the expectation of compensation for use of all project materials renders all of the enrichment at issue here unjust, not merely Celebrity's as a party to the contracts." (*Id.* 7 (emphasis omitted)).

The Court disagrees. Plaintiffs only allege the existence of licensing agreements with Celebrity, not with Co-Defendants. (*See generally* Compl.). There is no allegation of any promise by Co-Defendants, in contract or conduct, to pay Plaintiffs for the use, display, or reproduction of Plaintiffs' intellectual property. Plaintiffs have not advanced any controlling (or persuasive) authority that Celebrity's duties under the expired licensing agreements can be imputed to Co-Defendants. (*See* Reply 7 (citing only *Flooring Systems, Inc. v. Radisson Group., Inc.*, 772 P.2d 578 (Ariz. 1989), a case concerning a subcontractor's pursuit of an unjust enrichment claim against a property owner)). The fact Plaintiffs entered into agreements *with Celebrity* does not qualitatively change the nature of their claims *against Co-Defendants*.

*Plaintiffs' vicarious liability unjust enrichment claims against Celebrity (Counts V, VII, IX, XI, XIII, XV, XVII, XIX, and XXI)*. Counts V, VII, IX, XI, XIII, XV, XVII, XIX, and XXI assert vicarious liability for unjust enrichment claims against Celebrity. (*See* Compl. ¶¶ 43–46, 51–54, 59–62, 67–70, 75–78, 83–86, 91–94, 99–102, 107–10).

To support their unjust enrichment claims, Plaintiffs allege (1) Celebrity caused or allowed Co-Defendants[12] to acquire video recordings and/or still photographs of Plaintiffs' shows, and Co-Defendants derived a financial benefit from copying such works (*see id.* ¶¶ 43, 51, 59, 67, 75, 83, 91, 99, 107); (2) Celebrity directly profited from Co-Defendants' use of Plaintiffs' video recordings and/or still photographs (*see id.* ¶¶ 44, 52, 60, 68, 76, 84, 92, 100, 108); (3) Celebrity has the right and ability to control the infringing Co-Defendants' acts (*see id.* ¶¶ 45, 53, 61, 69, 77, 85, 93, 101, 109); and (4) Celebrity is vicariously liable for Co-Defendants' unjust enrichment realized from their use of video recordings and/or still photographs (*see id.* ¶¶ 46, 54, 62, 70, 78, 86, 94, 102, 110). Plaintiffs further assert Co-Defendants "used and/or continue to use the still images and video recordings obtained from Celebrity on their websites to sell cruises aboard Celebrity vessels, which sales financially benefit both the media partner and Celebrity." (*Id.* ¶ 26).

Given these allegations, Celebrity contends Plaintiffs' "state-law claims for unjust enrichment . . . necessarily seek to enforce rights that are equivalent to the exclusive rights provided by the Copyright Act." (Opp'n 18 (alteration added)). The Court agrees — Plaintiffs' vicarious liability for unjust enrichment claims are not qualitatively different from a claim under the copyright laws, which recognizes the theory of vicarious liability.[13] *See Metro-Goldwyn-*

---

[12] Plaintiffs do not assert a vicarious liability claim against Celebrity for Defendant, Royal Caribbean Cruises, Ltd.'s use of Plaintiffs' intellectual property. (*See generally* Compl.).

[13] "In order to state a claim for vicarious copyright infringement, a plaintiff must allege (1) the right and ability to supervise, and (2) a direct financial interest in the profits of the infringing activity." *Affordable*

*Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (stating although the Copyright Act creates liability only for direct infringers, a party may be liable if it "profit[s] from direct infringement while declining to exercise a right to stop or limit it" (alteration added; citations omitted)).

Although Plaintiffs attempt to articulate their claims as unjust enrichment, they essentially seek to hold Celebrity liable for enjoying profits gained from Co-Defendants' directly infringing conduct and for failing to stop or limit Co-Defendants' infringement. In other words, the essence of Plaintiffs' claims is that Celebrity is liable for vicarious infringement by profiting from Co-Defendants' direct infringement while also declining to exercise a right to stop or control it. Because Plaintiffs' vicarious liability for unjust enrichment claims assert rights that are equivalent to the rights available in a copyright claim, the claims are preempted[14] and must be dismissed. *See Metro-Goldwyn-Mayer Studios Inc.*, 545 U.S. at 930 (finding a party can be held vicariously liable for copyright infringement); *cf. Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 823 F. Supp. 2d 578, 588 (S.D. Tex. 2011) ("Because copyright law already recognizes . . . vicarious copyright infringement concepts, which extend joint and several liability to those who participate in the copyright infringement, a civil conspiracy claim does not add substantively to the underlying federal copyright claim and should therefore be preempted." (alteration added; quotations marks

---

*Aerial Photography, Inc. v. Modern Living Real Estate, LLC*, No. 19-cv-80488, 2019 WL 3716775, at *3 (S.D. Fla. Aug. 7, 2019) (quotation marks and citation omitted)).

[14] Plaintiffs insist their unjust enrichment claims fall outside the scope of the Copyright Act because the enrichment arose not from copyright infringement, but from Celebrity's failure to "pa[y] the contractually required license fee." (Reply 6 (alteration added; quotation marks)). The Court remains unpersuaded. The Complaint contains no allegations Celebrity promised to pay, in contract or conduct, for Co-Defendants' infringing use of Plaintiffs' intellectual property. (*See* Compl. ¶ 26 (alleging in conclusory fashion "Celebrity . . . has caused or allowed others to use [Plaintiffs' intellectual property] to their benefit" (alterations added))). Plaintiffs identify no extra element supporting their vicarious liability for unjust enrichment claims against Celebrity, nor is there one. In short, these claims are preempted by the Copyright Act.

and citations omitted)).

***Complete preemption***.  Plaintiffs contend that even if the Copyright Act preempts their state law claims, Defendants' removal is improper because "the Copyright Act lacks the extraordinary preemptive power that is a prerequisite for complete preemption[.]"  (Mot. 12 (alteration added; quotation marks omitted)).  To this, Defendants insist "Plaintiffs' argument against complete preemption should be rejected" because "[t]he overwhelming weight of authority supports complete preemption."  (Opp'n 19–20 (alteration added)).  The Court agrees with Defendants.

When a "federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law."  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).  Complete preemption therefore allows a defendant to properly remove an action to federal court when the allegations giving rise to federal jurisdiction are not apparent on the face of the well-pleaded complaint.  *See Caterpillar Inc.*, 482 U.S. at 393.  The Court can thus exercise jurisdiction over Plaintiffs' claims — notwithstanding the state law nature of the allegations in the Complaint — if the claims are completely preempted under the Copyright Act.

The undersigned is mindful the complete preemption doctrine is a "narrowly drawn means of assessing federal removal jurisdiction[.]"  *Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc*., 182 F.3d 851, 854 (11th Cir. 1999) (alteration added).  The Eleventh Circuit has cautioned that complete preemption should be applied hesitatingly and without enthusiasm.  *See id*. at 856.  Still, in *Beneficial National Bank*, the Supreme Court addressed complete preemption, extending the doctrine to embrace claims arising under the National Bank Act.  *See* 539 U.S. at 11.  In determining whether a cause of action is completely preempted, the Court noted "the proper

inquiry focuses on whether Congress intended the federal cause of action to be exclusive . . . ." *Id.* at 9 n.5 (alteration added).

Although the Eleventh Circuit has not addressed whether the Copyright Act triggers complete preemption, *see Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 864 (11th Cir. 2008), other circuit courts have determined it does. *See, e.g.*, *GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 706 (5th Cir. 2012) (holding the Copyright Act "completely preempts the substantive field" and thus "transforms a state-law complaint asserting claims that are preempted . . . into . . . a federal claim for purposes of the well-pleaded complaint rule" (alterations added; quotation marks and citation omitted)); *Ritchie v. Williams*, 395 F.3d 283, 286–87 (6th Cir. 2005) (finding the complete preemption doctrine applies to the Copyright Act); *Briarpatch Ltd., L.P*, 373 F.3d at 305 (concluding complete preemption doctrine extends to the Copyright Act because it is a "federal statute that both preempts state law and substitutes a federal remedy for that law, thereby creating an exclusive federal cause of action." (citation omitted)); *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 232–33 (4th Cir. 1993) ("The grant of exclusive jurisdiction to the federal district courts over civil actions arising under the Copyright Act, combined with the preemptive force of [section] 301(a), compels the conclusion that Congress intended that state-law actions preempted by [section] 301(a) of the Copyright Act arise under federal law." (alterations added; footnote call number omitted)).

Numerous district courts have come to the same conclusion. *See, e.g.*, *Gille*, 2019 WL 529079, at *4 (collecting cases); *Coyle v. O'Rourke*, No. CV 14-07121, 2015 WL 58700, at *6 (C.D. Cal. Jan. 5, 2015) (collecting cases); *Artco Grp., Inc. v. Peace Arch Duty Free Shop, Inc.*, No. 06-23056-Civ, 2007 WL 9707026, at *3 (S.D. Fla. Sept. 28, 2007) (denying motion to remand where conversion claim was preempted by the Copyright Act); (*see also* Opp'n 8–9 (collecting

cases)). The Court agrees the complete preemption doctrine extends to the Copyright Act and supports federal question removal.[15]

*Supplemental jurisdiction*. Having dismissed the claims of Plaintiffs' Complaint giving rise to a basis for federal jurisdiction,[16] the Court has discretion to either extend or decline to extend supplemental jurisdiction to Plaintiffs' remaining state law claim. *See* 28 U.S.C. § 1367(c). "[C]onsiderations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." *Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 537 (11th Cir. 2015) (alteration added; quotation marks and citations omitted). "But in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered will point toward declining to exercise jurisdiction over the remaining state-law claims." *Rosolen v. Home Performance All., Inc.*, No. 2:19-cv-00024, 2020 WL 6363886, at *7 (M.D. Fla. Oct. 28, 2020) (alteration adopted; quotation marks and citation omitted).

Weighing the relevant factors, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claim and will remand the claim to state court. *Cf. Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (encouraging "district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial." (alteration added; citation omitted)).

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Plaintiffs, Poet

---

[15] Plaintiffs urge the Court to apply *Badhwa v. Veritec, Inc.*, 367 F. Supp. 3d 890 (D. Minn. 2018), to its complete preemption analysis. (*See* Mot. 12–13). Put simply, the Court finds the reasoning of the other circuit courts and district courts more persuasive and declines to follow the decision in *Badhwa*.

[16] Because Plaintiffs concede they cannot replead their state law claims as federal claims (*see* Mot. 3 n.2), any amendment to the Complaint would be futile. *See Fetterhoff v. Liberty Life Assur. Co.*, 282 F. App'x 740, 743 (11th Cir. 2008).

Theatricals Marine, LLC; Poet Productions, LLC; Poet Technical Services, LLC; and Poet Holdings, Inc.'s Motion to Remand **[ECF No. 30]** is **DENIED**. However, the Court declines to exercise supplemental jurisdiction over Count II and *sua sponte* **REMANDS** that claim to the Circuit Court for the Eleventh Circuit in and for Miami-Dade County. All other claims are **DISMISSED** without prejudice. All pending motions are **DENIED** as moot.

The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 28th day of January, 2021.

                                                      **CECILIA M. ALTONAGA**
                                                      **UNITED STATES DISTRICT JUDGE**

cc:    counsel of record